SALLY A. STILLMAN, Appellant, v. JAMES WICKHAM and O. P. McKESSON.

Builders' Contract: ALTERATION: *Sureties.* A surety on a bond, conditioned for the performance of a builders' written contract according to specifications, may insist on the strict terms of his obligation, and claim a discharge for a material alteration of the contract, though made for his benefit.

SAME. The action of one for whom a house is being built, in directing the workmen, rejecting materials conforming to the specifications and buying others without consulting the contractors is such an alteration of the contract for its construction, requiring the contractors to furnish materials called for in the plans and specifications, as relieves the sureties from liability on the latter's bond conditioned for his compliance with all the conditions of the contract, although the contract permitted the owner to change the plans or designs and provided that the character of the materials furnished by the contractor was to be submitted to the judgment of the owner's superintendent.

RULE APPLIED. Where one signed as surety a bond conditioned for the performance of a builders' written contract, and the owner changed the plans, and extra work was done as she requested, on her oral promise to pay, without a special agreement minuted on the original contract as therein required, and she took the erection of the building from the contractor's control, directed the workmen, and rejected material duly furnished by the contractor and

bought other, without consulting him, the surety is discharged, notwithstanding the contractor's acquiescence in all that was done.

WAIVER. Where a surety on a bond conditioned for the performance of a builder's contract according to specifications, signed orders for the payment of certain work, including extras, it does not constitute a waiver of objections to alterations in the contract, where it is not shown that he knew of the omission to comply with the terms.

**Plea and Issue.** An issue not tendered in the pleadings cannot be considered.

*Appeal from Pottawattamie District Court.*—HON. WALTER I. SMITH, Judge.

WEDNESDAY, OCTOBER 26, 1898.

BY the terms of a written contract, G. S. Monroe agreed to construct a tenement house for the plaintiff according to specifications, and save her harmless of all liens and incumbrances. Mechanics' liens were established, however, amounting to three thousand, seven hundred and sixty-one dollars and fourteen cents, which the plaintiff was compelled to pay. With sums already paid, this was one thousand, nine hundred and ninety-two dollars and thirty-three cents more than the contract price. And this amount, with interest, the plaintiff seeks to recover from the sureties on Monroe's bond, conditioned for the performance of his contract. The defense interposed was that defendants were relieved from liability by alteration of the contract. Trial to court, judgment for defendants, and plaintiff appeals. AFFIRMED.

*Stone & Tinley* and *Stillman & Stillman* for appellant.

*Harl & McCabe* for appellees.

LADD, J.—The liability of the defendants, as sureties on the contractor's bond, for the amount paid to satisfy the mechanics' liens in excess of the contract price, is conceded, unless avoided by some change in the contract. Owing to the situation of the surety, he must be treated with the utmost

good faith, and may insist on the strict terms of his obligation. *School Dist. v. Reichard*, 50 Iowa, 98; *Starr v. Blatner*, 76 Iowa, 358; *Brigham v. Wentworth*, 11 Cush. 123; *Plow Co. v. Walmsley*, 110 Ind. 242 (11 N. E. Rep. 232); *Erickson v. Brandt*, 53 Minn. 10 (55 N.W. Rep. 62); *Bragg v. Shain*, 49 Cal. 131; *Mayhew v. Boyd*, 5 Md. 102; *Miller v. Stewart*, 9 Wheat. 680. If a material alteration is made in the contract without the surety's consent, he is discharged, even though the alteration may be for his benefit. Brandt Suretyship, section 338. We inquire, then, whether the contract between plaintiff and Monroe was altered or any of its conditions waived by the parties. In establishing the mechanic's lien the court found that the contractor had done extra work, valued at five hundred and seventy-four dollars. This was without special bargain evidenced in writing, as required by the contract, a portion of which we set out: "Extra work: In case it is deemed necessary during the construction of the building to have more or extra work done than is specified or shown in the plans, such work is to be done by the contractor, but he is required not to proceed to make such work without a special bargain or contract for the same, and minuted on the back of the original contract; otherwise it is not binding upon either of the parties." The evident object of this clause was to prevent changes or alterations on mere suggestion, without fixing their extent, and to avoid controversy and litigation as to what were extras and their value. But the extra work was done at the request of the plaintiff, and upon her oral promise to pay, without special bargain or agreement minuted on the original contract, as therein required. To our inquiry it is quite immaterial whether the parties might waive this condition, and substitute the method pursued. But see *Smith v. Gugerty*, 4 Barb. 614; *Bartlett v. Stanchfield*, 148 Mass. 394 (19 N. E. Rep. 549); *Osborne & Co. v. Backer*, 81 Iowa, 379; *Viele v. Insurance Co.*, 26 Iowa, 53; *King v. Insurance Co.*, 72 Iowa, 315.

By the terms of the original contract, each party was relieved from liability unless the extra work was done in pursuance of a special bargain in writing. It was not on the original contract that plaintiff was held for the extra work in the action referred to, but because of the separate oral agreement made with Monroe, substituted therefor. The obligations of the sureties was that the contractor "comply with all the conditions of said contract, and faithfully perform all the undertakings therein stipulated by him to be performed." Monroe was not bound to do the extra work save on the conditions stipulated, and, if plaintiff suffered loss by reason of the adoption of another method, the sureties are under no obligation to recoup it. Nor does this change affect other portions of the contract, as it expressly provides for such a contingency. This alteration was such as the parties were permitted to make, on the condition that liability should not attach.

II. The contract provided that Monroe "furnish all materials such as are called for in the plans, detail drawings, and specifications," and that he use "such materials as hereinafter described." There is also a provision that "he will be further held to submit, as to the character of the materials to be used and work done, to the judgment of the superintendent, and to secure from him all necessary interpretations of the designs and plans, and all necessary certificates regarding his payments on the contract; also for all additions to, or deductions from, the same, which may result from extra work or changes of designs or plans." The owner was permitted to change the plans or designs, and, in so far as necessary to meet such change, material differing from that specified might be required. This much must necessarily be inferred from the right to make such alterations. Further than this, and in no other way, the right to require material of a quality or character other than described in the specifications is not reserved to the owner. True, the character of the materials was to be submitted to the judgment of the superintendent, but only for his determination whether these

were as required by the contract. This condition does not allow the superintendent to reject material furnished in strict accordance with the specifications, and arbitrarily substitute that of different quality or construction to suit his whim or fancy. No one could safely contract for the erection of a building, and give another such an option. And the contractor was to furnish the materials, and not the owner, at his expense. But the evidence in this case clearly shows that the plaintiff virtually took the erection of the building from the control of the contractor. She directed the workmen, rejected material which conformed to the specifications, and bought other, without consulting Monroe. Lumber bought, after advertisement, of the lowest bidder, was rejected, and that of a different quality, at an increased price, procured of another firm. The hardware was changed, at an additional expense of eighty-three dollars. The millwork, after delivery, was refused, and ordered of another. Indeed, the contractor was not permitted to choose from whom he would purchase materials. Doubtless the plaintiff has a better house because of these changes, but by ignoring and altering the conditions of her contract the sureties were relieved from liability. They contracted for compliance with the terms of the contract, that Monroe furnish materials, and that these be of the character fixed by the specifications. The importance of the alterations is apparent. The contractor was deprived of the advantage of competition in purchasing, and obliged to pay much more than he would for that specified. It is no answer to say Monroe acquiesced in all this. The parties had the right to waive conditions, but in doing so disregarded those on which the indemnity rested. The extent of these alterations we need not determine. They were material, and there the inquiry must end. *Bethune v. Dozier,* 10 Ga. 235; *Simonson* v. *Grant,* 36 Minn. 439 (31 N. W. Rep. 861); *Paine v. Jones,* 76 N. Y. 274; *Brennan v. Clark,* 29 Neb. 385 (45 N. W. Rep. 472); 24 Am. & Eng. Enc. Law, 837.

III.     The plaintiff urged that by signing orders for the payment of certain work, including extras, the defendants

have waived objections to alterations in the contract. But it is not shown that they had any knowledge of the omission to comply with its terms. There can be no waiver without knowledge of the facts upon which it is based. But, aside from this reason, such an issue was not tendered in the pleadings, and therefore cannot be considered. The decree of the district court is AFFIRMED.